JEFFREY R. HUGHES AND WIFE, MELODY HUGHES, PLAINTIFFS v. K.P. WEBSTER, AND BI-LO, LLC, DEFENDANTS

No. COA05-551

(Filed 7 February 2006)

## 1. Pharmacists— misfilling of prescription—failure to instruct on peculiar susceptibility

The trial court erred in a negligence case arising out of defendant pharmacist's misfilling of a prescription by failing to instruct the jury on the peculiar susceptibility of plaintiff, and plaintiff is entitled to a new trial, because: (1) there was evidence at trial that an ordinary person would have been injured in the form of the normal toxicity effect of the pertinent drug such as vomiting, nausea, and slowed heart rate; (2) there was evidence that plaintiff's heart damage and stroke were caused by a hypersensitive drug reaction to the pertinent drug; (3) the jury sent a note during deliberations evidencing that the jury was confused by the instructions given by the judge; (4) there were allusions throughout the trial to a hypersensitive drug reaction of plaintiff, yet the jury was in no way instructed on what to do with this evidence; and (5) plaintiff requested a jury instruction on peculiar susceptibility while defendants requested one as well in the lan-

**HUGHES v. WEBSTER**

[175 N.C. App. 726 (2006)]

guage of N.C.P.I. Civ. 102.20, and given the incomplete state of the record, through no fault of appellant, it cannot be said that plaintiff waived his objection and failed to preserve any error for appeal.

**2. Witnesses— qualifications—expert testimony**

The trial court did not abuse its discretion in a negligence case arising out of the misfilling of a prescription by excluding a doctor's opinion on causation, because: (1) the doctor admitted that he was not an expert in the area in which he was testifying and further admitted that he came to have his opinion solely by reading the opinion of another expert in the field; and (2) the exclusion was harmless where the same opinion was elicited from several other experts throughout the trial.

**3. Appeal and Error— mootness—proper notice—new trial**

Although plaintiff contends the trial court erred in a negligence case arising out of the misfilling of a prescription by excluding the expert opinion as to loss of future wages and failing to exclude the testimony of defendants' experts where proper notice was not given pursuant to the order issued by the court, this issue is moot where notice can be properly given at a new trial granted on other grounds.

Appeal by plaintiffs from judgment and order entered 1 October 2004 and order entered 21 December 2004 by Judge Christopher M. Collier in Cabarrus County Superior Court. Heard in the Court of Appeals 7 December 2005.

*Ferguson Scarbrough & Hayes, P.A., by James E. Scarbrough, for plaintiff appellants.*

*Templeton & Raynor, P.A., by Kenneth R. Raynor, for defendant appellees.*

McCULLOUGH, Judge.

Plaintiffs appeal from judgment entered after a jury verdict finding that plaintiff Jeffrey R. Hughes was injured, through the negligence of defendants, entitling them to recover $50,000.00 and from an order awarding costs. A new trial must be awarded.

## FACTS

On 5 April 2002, plaintiffs (Mr. and Mrs. Hughes) filed a complaint against defendants (Webster and Bi-Lo) alleging negligence on the

part of Webster as an employee of Bi-Lo in the misfilling of Mr. Hughes' prescription which was the proximate cause of injury to Mr. and Mrs. Hughes. Webster and Bi-Lo filed a motion to dismiss and answer on 10 June 2002 denying negligence and liability for damages alleged to have been suffered by Mr. and Mrs. Hughes. Before trial, an order was entered on 1 March 2004 requiring Mr. and Mrs. Hughes to disclose all experts and expert opinions to be used at trial on or before 1 April 2004 and requiring Webster and Bi-Lo to then disclose all of their experts and expert opinions to be used at trial within thirty days. In the pretrial order pursuant to a conference with both side's attorneys, it was stipulated that Webster and Bi-Lo were negligent in filling the prescription of Mr. Hughes and that the only remaining issues at trial were whether Mr. and Mrs. Hughes were injured or damaged by the negligence of Webster and Bi-Lo and to what amount of damages, if any, Mr. and Mrs. Hughes were entitled.

The case proceeded to trial by jury on 21 June 2004. The evidence at trial tended to show that Mr. Hughes went to Bi-Lo Pharmacy to have a prescription for Aciphex 20 mg. refilled by Pharmacist Webster who misfilled the prescription giving Mr. Hughes Aricept 10 mg. bottled and labeled as Aciphex 20 mg. Unaware of the mistake, Mr. Hughes took the misfilled prescription from 22 May 2001 to 28 May 2001 when he began to experience nausea, dizziness, vomiting, weakness, headaches, tingling in his fingers, sweating, shortness of breath, and a slowed heart rate. Around 28 May 2001, while in the hospital, Mr. Hughes sustained damage to his heart and suffered a stroke. Mr. Hughes was released from the hospital and again, unknowingly, resumed taking the misfilled prescription. The adverse symptoms recurred and Mr. Hughes returned to the hospital on 9 June 2001. Once again Mr. Hughes was released from the hospital whereupon he resumed taking the misfilled prescription from 12 June 2001 to 23 June 2001 until he again experienced adverse symptoms and was readmitted to the hospital. The prescription ran out 5 July 2001 at which time Mr. Hughes returned to Bi-Lo for a refill and discovered that he had been taking a drug other than the one which he was prescribed.

The expert testimony showed that the normal toxicity effects of Aricept included nausea, vomiting, and slowed heart rate. Experts testifying on behalf of Mr. and Mrs. Hughes testified at trial that in their opinion, the heart damage and stroke suffered by Mr. Hughes was either directly caused by taking Aricept or by a hypersensitive adverse drug reaction. Experts testifying for Webster and Bi-Lo testi-

fied that it was their opinion that the drug Aricept did not cause Mr. Hughes' heart problems. The Hugheses also offered video deposition testimony of Dr. Kelling, the primary care physician of Mr. Hughes, which contained the opinion that Aricept was the cause of the nonischemic cardiomyopathy. Webster and Bi-Lo objected to this testimony by Dr. Kelling arguing that this opinion had not been disclosed prior to trial in accordance with the previous court order. Dr. Kelling also testified in his video deposition that his opinion had changed as to the cause of the heart damage based on reading an opinion of another expert and further admitted that he was not an expert in the area. The court excluded the opinion of Dr. Kelling as to the cause of Mr. Hughes' heart damage. A motion was made by Mr. and Mrs. Hughes on 30 June 2004 to exclude evidence of the opinions of Mr. Doering and Dr. Hadler as to the cause of Mr. Hughes' cardiomyopathy and stroke, contending that the experts' opinions were not properly disclosed as they had changed since discovery, and no supplementation to discovery answers were provided by Webster and Bi-Lo. Webster and Bi-Lo also made an objection to any testimony by Mr. Hughes' economist regarding loss of future wages where the opinion was not disclosed in discovery. The trial court sustained the objection and excluded any testimony as to loss of future wages.

On 30 June 2004 and 1 July 2004 the Hugheses submitted several requests for special jury instructions to the trial judge. The requested jury instructions included an instruction on sequence of events, peculiar susceptibility, proximate cause, and foreseeability. The parties stipulated on appeal that the court reporter was unable to take down all statements at the charge conference. The parties further stipulated that there was a detailed discussion at the charge conference in which both parties requested portions of North Carolina Civil Pattern Jury Instruction 102.20. After holding the charge conference, the trial judge decided not to give Pattern Jury Instruction 102.20 or any instruction on peculiar susceptibility. During deliberations the jury submitted a note stating, "Is the question was he injured or damaged or was he injured or damaged specifically by Aricept?" In response to this question, the trial judge re-read the proximate cause instruction given earlier to the jury.

The jury found that Mr. Hughes was injured or damaged by the negligence of Webster and Bi-Lo and that he was entitled to recover $50,000.00 but found that Mrs. Hughes was not injured or damaged by their negligence and entitled to no damages. A judgment and order awarding costs was entered 1 October 2004 awarding $50,000.00 in

damages and $23,869.44 in costs to Mr. Hughes. Mr. and Mrs. Hughes filed a motion for a new trial on 1 October 2004 which was denied by order entered 21 December 2004.

Plaintiffs now appeal.

## ANALYSIS

### I

[1] On appeal, plaintiffs first contend that the trial court erred in failing to instruct the jury on the peculiar susceptibility of the plaintiff Mr. Hughes. We agree.

On appeal, this Court considers a jury charge contextually and in its entirety. *Jones v. Development Co.*, 16 N.C. App. 80, 86, 191 S.E.2d 435, 439, *cert. denied*, 282 N.C. 304, 192 S.E.2d 194 (1972). The charge will be held to be sufficient if "it presents the law of the case in such manner as to leave no reasonable cause to believe the jury was misled or misinformed[.]" *Id.* at 86-87, 191 S.E.2d at 440. The party asserting error bears the burden of showing that the jury was misled or that the verdict was affected by an omitted instruction. *Robinson v. Seaboard System Railroad*, 87 N.C. App. 512, 524, 361 S.E.2d 909, 917 (1987), *disc. review denied*, 321 N.C. 474, 364 S.E.2d 924 (1988) ("Under such a standard of review, it is not enough for the appealing party to show that error occurred in the jury instructions; rather, it must be demonstrated that such error was likely, in light of the entire charge, to mislead the jury.").

In general, where the facts of a case warrant a jury instruction on peculiar susceptibility, and where the trial court fails to charge the jury accordingly, such a failure may constitute reversible error. *See Casey v. Fredrickson Motor Express Corp.*, 97 N.C. App. 49, 387 S.E.2d 177, *disc. review denied*, 326 N.C. 594, 393 S.E.2d 874 (1990). The peculiar susceptibility doctrine is relevant to the issue of proximate causation, and without the instruction, the jury may conclude that the defendant was negligent, but that such negligence did not proximately cause the plaintiff's injuries. *See id.* at 54, 387 S.E.2d at 180. Thus, if the facts in the instant case warranted a jury instruction on peculiar susceptibility due to a pre-existing mental or physical condition, the trial court's failure to instruct the jury accordingly would constitute reversible error. *See Taylor v. Ellerby*, 146 N.C. App. 56, 552 S.E.2d 667 (2001).

A jury instruction on peculiar susceptibility is warranted where a pre-existing condition aggravates an injury suffered by the plaintiff.

**HUGHES v. WEBSTER**

[175 N.C. App. 726 (2006)]

*See id.* "The general rule is that if the defendant's act would not have resulted in any injury to an ordinary person, he is not liable for its harmful consequences to one of peculiar susceptibility, except insofar as he was on notice of the existence of such susceptibility, **but if** his misconduct amounted to a breach of duty to a person of ordinary susceptibility, he is liable for. all damages suffered by plaintiff notwithstanding the fact that these damages were unusually extensive because of peculiar susceptibility." *Lockwood v. McCaskill*, 262 N.C. 663, 670, 138 S.E.2d 541, 546 (1964) (emphasis added).

In the instant case, there was evidence at trial that an ordinary person would have been injured in the form of the normal toxicity effect of the drug Aricept such as vomiting, nausea and slowed heart rate. Further there was evidence that Mr. Hughes' heart damage (cardiomyopathy) and stroke were caused by a hypersensitive drug reaction to Aricept. This evidence warrants an instruction on peculiar susceptibility. Moreover, the jury sent a note during deliberations asking, "Is the question was he injured or damaged or was he injured or damaged specifically by Aricept?" evidencing that the jury was confused by the instructions given by the judge. There were allusions throughout the trial to a hypersensitive drug reaction of Mr. Hughes, yet the jury was in no way instructed on what to do with this evidence.

Mr. Hughes requested a jury instruction on peculiar susceptibility and Webster and Bi-Lo requested one as well in the language of N.C.P.I.—Civ. 102.20. The transcript of the charge conference evinces that there was a lengthy discussion regarding N.C.P.I.—Civ. 102.20; however, the transcript is incomplete. It appears from the record that Mr. Hughes was requesting peculiar susceptibility language in the instructions when he was diverted to a discussion of N.C.P.I.—Civ. 102.20. In the transcript it appears that there was further discussion as to what paragraphs of this pattern jury instruction should be given and there is an indication that Mr. Hughes agreed to the decision not to give one of the paragraphs. However, this Court does not find that his agreement to this was an acquiescence for the trial judge to fail to instruct the jury entirely on peculiar susceptibility. Therefore, given the incomplete state of the record, through no fault of the appellant, it cannot be said that Mr. Hughes waived his objection and failed to preserve any error for appeal. He is therefore entitled to a new trial.

## II

**[2]** Next plaintiff Mr. Hughes contends that the trial court erred in excluding Dr. Kelling's opinion on causation. We disagree.

It is well established that trial courts must decide preliminary questions concerning the qualifications of experts to testify or the admissibility of expert testimony. N.C. Gen. Stat. § 8C-1, Rule 104(a) (2005). When making such determinations, trial courts are not bound by the rules of evidence. *Id.* In this capacity, trial courts are afforded "wide latitude of discretion when making a determination about the admissibility of expert testimony." *State v. Bullard*, 312 N.C. 129, 140, 322 S.E.2d 370, 376 (1984). Given such latitude, it follows that a trial court's ruling on the qualifications of an expert or the admissibility of an expert's opinion will not be reversed on appeal absent a showing of abuse of discretion. *State v. Anderson*, 322 N.C. 22, 28, 366 S.E.2d 459, 463, *cert. denied*, 488 U.S. 975, 102 L. Ed. 2d 548 (1988). A three-step inquiry must be made in determining whether the expert testimony is admissible: "(1) Is the expert's proffered method of proof sufficiently reliable as an area for expert testimony? (2) Is the witness testifying at trial qualified as an expert in that area of testimony? (3) Is the expert's testimony relevant?" *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 458, 597 S.E.2d 674, 686 (2004) (citation omitted).

In the instant case, there were two grounds for excluding the opinion of Dr. Kelling as to causation. The first ground was that Dr. Kelling changed his opinion from the time of his initial deposition and his deposition given as trial testimony. Dr. Kelling stated in his initial deposition that he did not know the cause of Mr. Hughes' cardiomyopathy and in his deposition for trial he testified that Aricept was the cause. Failure to disclose this opinion was in direct violation of the pretrial order requiring disclosure by 1 April. However, this ground is moot.

The second ground for excluding the opinion of Dr. Kelling rested on the fact that he did not have the requisite expertise to proffer this opinion. Dr. Kelling admitted that he was not an expert in the area in which he was testifying and further admitted that he came to have his opinion solely by reading the opinion of another expert in the field. These are not appropriate qualifications for expert testimony. Moreover, the exclusion was harmless where the same opinion was elicited from several other experts throughout the trial. *See State v. Richardson*, 341 N.C. 658, 462 S.E.2d 492 (1995) (Any error in exclusion of evidence is harmless where evidence of the same import was

admitted through the testimony of other witnesses.). Therefore, this assignment of error is overruled.

## III

[3] Further, plaintiff contends that the trial court erred in excluding the expert opinion as to loss of future wages and failing to exclude the testimony of defendants' experts where proper notice was not given pursuant to the order issued by the court. This issue is moot where notice can be properly given at a new trial.

Accordingly, the trial court did not err in excluding the opinion of Dr. Kelling as to causation but did commit reversible error in failing to instruct the jury on peculiar susceptibility, and therefore a new trial must be granted. The remaining assignments of error are either meritless or deemed moot due to the decision to grant a new trial.

New trial.

Judges HUNTER and GEER concur.